UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVON MILLER,
    *Plaintiff*,

v.

SCOTT SEMPLE *et al.*,
    *Defendants*.

No. 3:18-cv-01769 (JAM)

**INITIAL REVIEW ORDER
DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Davon Miller was formerly a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against numerous correctional officials claiming that they violated his constitutional and federal statutory rights by confiscating his legal paperwork and by establishing a new policy that adds "sovereign citizens" to the DOC's list of disruptive Security Risk Groups ("SRGs"). For the reasons set forth below, I will DISMISS the complaint pursuant to 28 U.SC. § 1915A.

### BACKGROUND

The complaint names the following defendants: Commissioner Scott Semple, Deputy Commissioner M. Rinaldi, Wendy Martyn, Correction Officer Ramirez, Lieutenant Ouellette, "Director of Security Aldi Santiago,"[1] Lieutenant Alexander, Correction Officer Milner, Correction Officer Conales, and Assistant Attorney General ("AAG") Thomas Davis. Doc. #1.

---

[1] Miller likely is referring to two different people: Antonio Santiago, *see* Doc. #1 at 12 (Memorandum from "A. Santiago, Director of Security"), and John Aldi, who is the SRG Counselor Supervisor at DOC. Because Miller uses the specific title of "Director of Security" in reference to this individual defendant, I will construe Miller's complaint as referring to Director of Security Santiago only.

The following facts are alleged in the complaint and are accepted as true only for purposes of this ruling.

On June 27, 2018, AAG Davis deposed Miller at the Carl Robinson Correctional Institution ("CRCI") in Uncasville, Connecticut, in connection with another civil case. Doc. #1 at 1 (¶ 1). The deposition was later transcribed by Lisa Warner, and a copy was mailed to Miller for certification. *Ibid.* The mailing instructed Miller to certify his deposition testimony and mail it back to the court reporter one week later. *Ibid.*

Three days later, on June 30, 2018, Correction Officer Milner assaulted Miller and placed him in segregation for one week. Doc. #1 at 1-2 (¶ 2).[2] Per DOC policy, when an inmate is sent to segregation, a correction officer must complete a "property matrix" listing all of the inmate's personal property, which the inmate must sign. *Id.* at 2 (¶ 2). But Miller did not receive a copy of the property matrix until July 8, 2018, when he left segregation and was called to reclaim his personal items. *Ibid.* After a thorough inspection of his property, Miller discovered that two years' worth of his legal research was missing (about 200 pages of material), and no one could tell him why. *Ibid.* When he reviewed the property matrix, Miller realized that his signature had been forged. *Id.* (¶ 3). Correction Officer Conales was the official who completed the matrix. *Ibid.*

On July 11, 2018, Miller went to the "school building" at CRCI to certify his deposition testimony. Doc. #1 at 2 (¶ 4). When he arrived, Wendy Martyn, a notary public, read through the testimony without Miller's permission. She discovered that Miller had stated therein that he was not a naturalized citizen under the Fourteenth Amendment and that AAG Davis had inquired of Miller, "Are you claiming a sovereign citizenship," to which Miller presumably answered in the

---

[2] Because Miller does not further describe this "assault" or allege that the assault was a violation of his constitutional rights, I do not understand Miller's complaint to allege a claim arising from this "assault."

affirmative. *Ibid.*; *see also id.* at 3 (¶ 6). Martyn stated that she would not notarize the deposition until the warden approved it. *Id.* at 2 (¶ 4). Martyn then alerted other DOC officials. *Id.* at 2 (¶ 5).

Shortly thereafter, Correction Officer Ramirez restrained Miller and escorted him to the "ops building" where he was stripped of his personal property and taken into a bathroom, where Lieutenant Ouellette was waiting. Doc. #1 at 2-3 (¶ 5). Ramirez and Ouellette read through and confiscated all of Miller's "confidential" legal documents. *Id.* at 3 (¶ 5). Both officials informed Miller that an inmate's claim of sovereign citizenship violated a new DOC policy, which was implemented on July 5, 2018 and which added sovereign citizens to the list of disruptive SRGs. *Ibid.* The DOC policy was set forth in a memorandum sent from Director of Security "A. Santiago" to all district administrators and wardens and "CC:" to Commissioner Semple and Deputy Commissioner Rinaldi. *Ibid.*; *see also id*. at 12. The only time Miller claimed to be a sovereign citizen was in the deposition conducted by AAG Davis on June 30, 2018, before the policy's implementation on July 5, 2018. *Id.* at 3 (¶ 6).

Miller later explained to Lieutenant Alexander that the July 2018 DOC policy violates his rights under the United States Constitution and 18 U.S.C. §§ 241 and 242. Doc. #1 at 3-4 (¶¶ 7-9). Miller submitted an Inmate Request Form on July 12, 2018, to Alexander, in which he objected to the DOC policy for the same reasons. *Id*. at 9. Although Alexander noted in reply that "[t]he majority of [Miller's] paper was returned," he further explained that the "rest is awaiting further review," *ibid.*, indicating that at least some of Miller's legal materials were retained and sent to the DOC Security Division, *id.* at 4 (¶ 9).

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, I must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the

3

complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If a prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Miller claims that the DOC policy enacted on July 5, 2018, which added sovereign citizens to the list of disruptive SRGs, violates his rights under the First Amendment, the Fifth Amendment, the Fourteenth Amendment Privileges and Immunities, Due Process, and Equal Protection Clauses, and 18 U.S.C. §§ 241 and 242. Doc. #1 at 3-4 (¶¶ 7-8). Suing all defendants in their official and individual capacities, he seeks monetary damages and injunctive relief in the form of (1) an order directing the termination of defendants' employment and prosecution of all defendants, (2) an order terminating the DOC's unconstitutional policy, and (3) an order directing the DOC to return his personal property. *Id.* at 4-5.

### *Official capacity claims for money damages*

Miller seeks compensatory and punitive damages from the defendants. As an initial matter, I must consider whether his money damages claims against all defendants in their official

capacities may proceed. "[S]tate officials sued in their official capacities under § 1983 are immune from suit for damages pursuant to the Eleventh Amendment." *Currytto v. Doe*, 2019 WL 2062432, at *4 (D. Conn. 2019) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) and *Davis v. New York*, 316 F.3d 93 (2d Cir. 2002)). Because all defendants work for the DOC, they are immune from damages suits in their official capacities. Accordingly, insofar as Miller sues all defendants in their official capacities for money damages, I will dismiss his claims.

### *Claims against Semple and Rinaldi in their individual capacities*

Miller also sues all defendants in their individual capacities for money damages. Damages liability under section 1983 requires the personal involvement of each individual held liable. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).

In his complaint, Miller makes only one mention of Semple and Rinaldi: that both were copied on Santiago's memorandum of July 5, 2018, concerning the new DOC policy. Doc. #1 at 3(¶ 5); *see also id*. at 12. This mention of Semple and Rinaldi, standing alone, is insufficient to personally implicate them in the events of which Miller complains. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). Accordingly, for lack of any facts detailing their personal involvement, I conclude that Miller has failed to allege sufficient facts to permit a claim for money damages to proceed against Semple and Rinaldi in their individual capacities.

With respect to section 1983 claims for money damages, this leaves for consideration only Miller's individual-capacity claims against Martyn, Ramirez, Ouellette, Santiago, Alexander, Milner, Conales, and Davis.

*First Amendment*

Miller claims that the July 2018 DOC policy violates the First Amendment, but he does not explain which of his First Amendment rights were violated. *See* Doc. #1 at 4 (¶ 8). Liberally construing his allegations, I presume that Miller may be attempting to state one or both of the following First Amendment claims: (1) a retaliation claim, and (2) a denial of access to the courts.

Miller may be attempting to state a claim that the defendants retaliated against him for exercising his right to free speech or association by declaring himself a sovereign citizen or filing a lawsuit against the DOC. *See* Doc. #1 at 10. "Prison officials may not retaliate against inmates for exercising their constitutional rights." *Riddick v. Arnone*, 2012 WL 2716355, at *6 (D. Conn. 2012). "To prevail on a First Amendment retaliation claim, [Miller] must establish (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against [him], and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019); *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted). In order to allege causation, Miller must state facts "showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline [him]." *Harnage v. Brighthaupt*, 168 F. Supp. 3d 400, 412 (D. Conn. 2016), *aff'd*, 720 F. App'x 79 (2d Cir. 2018). "An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon*, 938 F.3d at 40 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)).

Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise

not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted). Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotations and citation omitted).

Assuming the premise that Miller's declaration of sovereign citizenship is protected by the First Amendment, to the extent Miller's complaint may be understood as a claim that his placement in segregation or the confiscation of his legal materials constituted retaliation for his declaration of sovereign citizenship, he fails to allege facts that plausibly establish the requisite causality. Indeed, Miller has not alleged facts to suggest that confiscation of his property or his placement in segregation was motivated by retaliation for his declaration of sovereign citizenship.

Nor has Miller provided specific and factual allegations that any adverse action taken against him was in retaliation for filing a lawsuit. Miller includes only a bare conclusory allegation of retaliation for filing a lawsuit in an exhibit of his complaint. Doc. #1 at 10. To the extent that this may be understood as a First Amendment retaliation claim, Miller does not specify what other litigation he may have pending, nor whether any defendants were aware of that litigation. I will therefore dismiss Miller's First Amendment retaliation claim.

The other First Amendment claim that Miller may be attempting to state is that the defendants deprived him of his right to access the courts by confiscating his legal paperwork. *See* Doc. #1 at 10. The Supreme Court has long recognized a constitutional right of access to the courts, notwithstanding that the right's precise source in the Constitution remains uncertain. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002); *see also Blake v. Dowe*, 36 F. Supp. 3d

271, 276-77 (D. Conn. 2014). A right of access to the courts correlatively means a right to be free from obstruction of this right by the government, as the Second Circuit has recognized. *Whalen v. County of Fulton*, 126 F.3d 400, 406 (2d Cir. 1997) ("The constitutional right of access [to the courts] is violated where government officials obstruct legitimate efforts to seek judicial redress."). Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials. *See Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986).

To state a claim for denial of access to the courts, a plaintiff must demonstrate that he suffered an actual injury, *see Lewis v. Casey*, 518 U.S. 343, 351-53 (1996)—that is, he must allege that "defendant's conduct deprived him of an opportunity to press some nonfrivolous, arguable cause of action in court," *Baker v. Weir*, 2016 WL 7441064, at *2 (D. Conn. 2016) (quoting *Brown v. Choinski*, 2011 WL 1106232, at *5 (D. Conn. 2011)). What this means is that "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation," and "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 415, 416. A plaintiff must describe "the predicate claim . . . well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416. In this manner, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417-18 (footnote omitted).

Here, for at least three reasons, Miller's complaint falls well short of plausibly alleging an access-to-courts claim. First, Miller's complaint does not describe by name or with precision any past or present legal claim or defense that has been thwarted by any of the defendants' actions. Second, Miller's complaint does not establish that any such actions are or were arguably meritorious and not frivolous. Third, his complaint does not show why these particular legal papers are of consequence to any particular court actions. It is far from clear and plausible why the more-than-200 pages of legal research, Doc. #1 at 2 (¶ 2), were indispensable to Miller's ability to maintain any court action. For these reasons, Miller's complaint does not adequately allege a cognizable claim for a violation of plaintiff's right of access to the courts. *See Baker*, 2016 WL 7441064, at *3 (dismissing prisoner complaint for similar reasons). Therefore, I will dismiss any First Amendment claim of denial of access to the courts.

### *Privileges and Immunities*

Miller next claims that the July 2018 DOC policy violates the Privileges and Immunities Clause. The Privileges and Immunities Clause under the Fourteenth Amendment provides, "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. CONST. AMEND. XIV, § 1. The Clause operates to "place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those states are concerned." *Schoenefeld v. Schneiderman*, 821 F.3d 273, 279 (2d Cir. 2016) (quoting *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 180 (1868)). In other words, the Clause "prevents a State from discriminating against citizens of other States in favor of its own." *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 382 (1978) (internal quotation omitted).

9

To prevail on a claim under the Privileges and Immunities Clause, a plaintiff must demonstrate that a state has burdened nonresident activity that is "sufficiently basic to the livelihood of the Nation as to fall within the purview of the Privileges and Immunities Clause." *Schoenefeld*, 821 F.3d at 279 (quoting *Supreme Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988)). For example, the ability to pursue a common calling is protected by the Privileges and Immunities Clause. *McBurney v. Young*, 569 U.S. 221, 227 (2013). Yet the Supreme Court has cautioned that constitutionally protected privileges and immunities are burdened "only when [challenged] laws were enacted for the protectionist purpose of burdening out-of-state citizens." *McBurney*, 569 U.S. at 221; *see also Schoenefeld*, 821 F.3d at 279.

Miller's allegations in this case do not state a plausible claim for a violation of the Privileges and Immunities Clause. As an initial matter, "[a]lthough the Privileges and Immunities Clause speaks in terms of citizens," it is now well established that "for analytic purposes citizenship and residency are essentially interchangeable." *Friedman*, 487 U.S. at 64; *Schoenefeld*, 821 F.3d at 279 n.3. During the events in question, Miller was an inmate and resident of CRCI, a DOC facility located in Connecticut. It would thus be difficult to describe Miller as an out-of-state resident.

Even assuming Miller's claim of sovereign citizenship means he self-identifies as a non-Connecticut citizen, his claim under the Privileges and Immunities Clause cannot be maintained. To the extent that Miller's allegations may be construed as contending that the DOC policy has "hamper[ed] his ability to pursue a common calling" on the basis of his claimed sovereign citizenship, *Schoenefeld*, 821 F.3d at 279 (citing *McBurney*, 569 U.S. at 226-27), the DOC policy does not do so "in the sense prohibited by the Privileges and Immunities Clause," *McBurney*, 569 U.S. at 227. Indeed, Miller has failed to "allege," and "ha[s] offered no proof," that any of

To prevail on a claim under the Privileges and Immunities Clause, a plaintiff must demonstrate that a state has burdened nonresident activity that is "sufficiently basic to the livelihood of the Nation as to fall within the purview of the Privileges and Immunities Clause." *Schoenefeld*, 821 F.3d at 279 (quoting *Supreme Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988)). For example, the ability to pursue a common calling is protected by the Privileges and Immunities Clause. *McBurney v. Young*, 569 U.S. 221, 227 (2013). Yet the Supreme Court has cautioned that constitutionally protected privileges and immunities are burdened "only when [challenged] laws were enacted for the protectionist purpose of burdening out-of-state citizens." *McBurney*, 569 U.S. at 221; *see also Schoenefeld*, 821 F.3d at 279.

Miller's allegations in this case do not state a plausible claim for a violation of the Privileges and Immunities Clause. As an initial matter, "[a]lthough the Privileges and Immunities Clause speaks in terms of citizens," it is now well established that "for analytic purposes citizenship and residency are essentially interchangeable." *Friedman*, 487 U.S. at 64; *Schoenefeld*, 821 F.3d at 279 n.3. During the events in question, Miller was an inmate and resident of CRCI, a DOC facility located in Connecticut. It would thus be difficult to describe Miller as an out-of-state resident.

Even assuming Miller's claim of sovereign citizenship means he self-identifies as a non-Connecticut citizen, his claim under the Privileges and Immunities Clause cannot be maintained. To the extent that Miller's allegations may be construed as contending that the DOC policy has "hamper[ed] his ability to pursue a common calling" on the basis of his claimed sovereign citizenship, *Schoenefeld*, 821 F.3d at 279 (citing *McBurney*, 569 U.S. at 226-27), the DOC policy does not do so "in the sense prohibited by the Privileges and Immunities Clause," *McBurney*, 569 U.S. at 227. Indeed, Miller has failed to "allege," and "ha[s] offered no proof," that any of

defendants' actions were done "in order to provide a competitive economic advantage for [Connecticut] citizens." *Schoenefeld*, 821 F.3d at 280 (quoting *McBurney*, 569 U.S. at 228). I will therefore dismiss Miller's claim under the Privileges and Immunities Clause.

*Due Process*

Miller also claims that the defendants violated his right to due process under the Fourteenth Amendment by confiscating his property and/or placing him in segregation. The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. The "standard analysis" for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). In the prison context (involving someone whose liberty interests have already been severely restricted because of his or her confinement in a prison), a plaintiff must show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court concluded that a prisoner who was subject to a disciplinary term of a 30-day confinement in restrictive housing did not sustain a deprivation of a liberty interest that was subject to protection under the Due Process Clause. *Id*. at 486. Following *Sandin*, the Second Circuit has explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

Assuming *arguendo* that Miller's move to segregated housing was related to the DOC policy or Miller's declaration of sovereign citizenship, Doc. #1 at 1-2 (¶ 2), I cannot conclude

11

that his one-week-long stay in segregation, which is significantly shorter than 30 days, constituted a deprivation of a liberty interest that implicates the Due Process Clause. And even if this stay in restricted housing did infringe on a protected liberty interest, Miller has still failed to plead that he was denied that liberty interest without being afforded due process of law. The procedural safeguards to which prisoner plaintiff is entitled before being deprived of a constitutionally significant liberty interest are well-established. These requirements include: (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of the defense, subject to the correctional institution's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *See Wolff v. McDonnell*, 418 U.S. 539, 564-69 (1974); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).

But Miller has not plausibly alleged any failure of notice, opportunity to appear, or opportunity to make a written statement, alleging only that he was not given a property matrix form until after he was released from segregated housing on July 8, 2018. Doc. #1 at 1-2 (¶ 2). That, alone, is insufficient to establish a due process violation. *See, e.g.*, *Harris v. Taylor*, 441 Fed. App'x. 774, 775 (2d Cir. 2011) ("[F]ailure to comply with a state law or administrative directive does not by itself establish a violation of § 1983"). In the absence of sufficient factual allegations, I will dismiss any procedural due process claim made on the basis of Miller's time in segregated housing.

Finally, to the extent Miller claims that the loss of his personal property constituted a violation of due process, his claim is not cognizable in this action. The Supreme Court has held that a procedural due process claim under the Fourteenth Amendment for the negligent or

12

intentional deprivation of property is not cognizable under section 1983 where adequate state law post-deprivation remedies exist. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Edwards v. Erfe*, 588 Fed. App'x. 79, 80 (2d Cir. 2015) . And Connecticut law provides post-deprivation remedies for individuals claiming unauthorized deprivations of property by state or municipal officials. *See Ramos v. Malloy*, 2018 WL 1936144, at *3 (D. Conn. 2018). Miller does not allege facts to show that state post-deprivation remedies are inadequate or unavailable. Therefore, I will dismiss Miller's due process claim that is based on the confiscation of his legal paperwork.

### *Equal Protection*

"The Equal Protection Clause . . . commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To state an equal protection claim, [Miller] must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Trowell v. Theodarakis*, 2018 WL 3233140, at *3 (D. Conn. 2018) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). In the prison setting, the plaintiff must also show "that the disparity in treatment cannot survive the appropriate level of scrutiny which means that he must demonstrate that his treatment was not 'reasonably related to any legitimate penological interests.'" *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (alteration omitted) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

But self-identified sovereign citizens "do not fall within a protected classification" under the Equal Protection Clause. *See, e.g.*, *Elleby v. Martucello*, 2018 WL 4635712, at *6, *report and recommendation adopted*, 2018 WL 3769965 (N.D.N.Y. 2018). Sovereign citizens are "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa*, 511 F. App'x 105, 106 n.1 (2d Cir. 2013).

Because sovereign citizenship is not a suspect classification for purposes of the Equal Protection Clause, any discrimination against Miller on that basis would be subject to review only for whether prison officials had a rational basis to do so. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *Marcello v. Currey*, 364 F. Supp. 3d 155, 158-59 (D. Conn. 2019). In light of sovereign citizens' view that they are not subject to ordinary law, the DOC had at least a rational basis to subject sovereign citizens to greater security measures.

A violation of the Equal Protection Clause may also occur when a governmental classification singles out solely the plaintiff as a "class of one" for disparate treatment. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 29 & n.8 (2d Cir. 2018). To succeed on a class-of-one claim, a plaintiff must show that he "has been intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Awad v. Semple*, 2019 WL 1922294, at *3 (D. Conn. 2019).

In this case, Miller has not alleged that he was treated differently than other similarly situated inmates while confined in the DOC. Miller also does not allege any facts that could give rise to the inference that any action taken against him was the product of any intentional or purposeful discrimination by any of the defendants. Nor has Miller alleged anything to suggest

14

that the DOC's policy that added sovereign citizens to the SRG list was motivated by anything other than a rational reason. *Cf. Lexis v. Bellemare*, 2019 WL 1596571, at *6 (D. Conn. 2019). Miller's allegations are thus also insufficient to establish a class-of-one claim. Therefore, I will dismiss Miller's Equal Protection claim.

### *Statutory claim*

Lastly, Miller alleges violations of 18 U.S.C. §§ 241 and 242. These criminal statutes, however, do not give rise to a cause of action that a private party may allege as a basis for relief in civil court action. *See Republic of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014); *Fore v. Connecticut Light & Power*, 2015 WL 5722719, at *4 (D. Conn. 2015) (citing cases). Accordingly, I will dismiss Miller's claims under 18 U.S.C. §§ 241 and 242.

### CONCLUSION

For the foregoing reasons, I conclude that the complaint fails to state a plausible claim, and the complaint is DISMISSED pursuant to 28 U.S.C. § 1915A. Because it is apparent that any amendment would be futile, this dismissal is with prejudice. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven, Connecticut, this 25th day of November 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge